**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0363-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMES A. BAILEY,

     Defendant-Appellant.

_____

Submitted April 28, 2021 – Decided June 2, 2021

Before Judges Whipple and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 13-10-1303.

Joseph E. Krakora, Public Defender, attorney for appellant (Anderson D. Harkov, Designated Counsel, on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Narline Casimir, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, James A. Bailey, appeals from the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. We reverse and remand for an evidentiary hearing.

Defendant raises the following issue on appeal:

> POINT ONE: THE PCR COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING BECAUSE THE INEXPLICABLE FAILURE OF MOTION COUNSEL TO OBTAIN DEFENDANT'S MEDICAL AND PROPERTY RECORDS COULD ONLY BE EXPLORED IN AN EVIDENTIARY HEARING AND THESE RECORDS ESTABLISHED A PRIMA FACIE CASE THAT HAD THE RECORDS BEEN MADE AVAILABLE TO THE MOTION COURT THERE WOULD HAVE BEEN A DIFFERENT OUTCOME TO THE MOTION TO SUPPRESS.

> POINT TWO: THE FAILURE OF MOTION COUNSEL TO INVESTIGATE DEFENDANT'S TRUTHFUL CLAIM THAT HE WAS NOT WEARING THE CLOTHING DESCRIBED BY THE ANONYMOUS TIPSTER AND THAT HE WAS WEARING AN ORTHOPEDIC BOOT AT THE TIME OF HIS ARREST, CONTRARY TO THE TESTIMONY OF THE DETECTIVE WHO ARRESTED HIM, DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

The facts are presented at length in our opinion in defendant's direct appeal and need not be repeated fully here. State v. Bailey, No. A-4998-14 (App. Div. May 12, 2017) (slip op. at 1-4). His application for certification to

2

our Supreme Court was denied. State v. Bailey, 231 N.J. 311 (2017). Thus, we reiterate only the facts necessary to address defendant's arguments herein.

On October 10, 2013, a Mercer County Grand Jury indicted defendant with: count one, second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); count two, third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3); and count three, second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b), under indictment number 13-10-1303. Defendant had been arrested by the police in Trenton on July 22, 2014, and moved to suppress the handgun recovered during the arrest at a December 2014 hearing.

The dispute here arises from the suppression hearing, during which defendant alleges his motion counsel did not raise significant differences in his appearance from the description provided by an anonymous tipster. At the suppression hearing, Detective Scott Peterson testified for the State. Peterson explained he was assigned to a robbery-suppression task force with Detective Gregory Hollo. The two detectives were driving in an unmarked cruiser to their assigned patrol area when they were dispatched to investigate a man with a gun.

The call came as Peterson and Hollo were leaving the police station around 6:20 p.m., and it directed them to "Chambers and Walnut," which Peterson described as a "high crime area" with "[a] lot of narcotics" where

A-0363-19

"individuals shoot[] guns off." The call emanated from a tipster who alerted police about a man with a gun described as "black male, bald head, white t-shirt, and [blue jeans] . . . with a pit bull [sic]."

When the detectives arrived at the corner of Chambers and Walnut, there was no suspect. They notified the other units that were responding and drove around looking for the individual. Peterson made a left onto Tioga Street and headed toward Hampton Avenue, before making another left back toward Walnut via Hampton Avenue. While the officers were approaching Walnut, they saw an individual who they believed matched the description of the man with a gun, talking in front of a corner store with four or five other individuals.

Peterson drove the cruiser across the street and directly toward the group, primarily toward defendant. He then parked approximately ten feet away from defendant. Peterson testified he was looking right at defendant when he pulled up and defendant looked "startled" after the two made eye contact. Peterson stated the pit bull was not on a leash and the other individuals present were males who appeared to be in their early twenties or older.

As Peterson put the cruiser in park and took the keys out of the ignition, Hollo exited the passenger door with his weapon drawn at his side. When Peterson exited, he was walked with his gun in a "ready" position, using his left

A-0363-19

hand to support his right hand, but not pointed at anyone in particular. He also told the other individuals to stay back, and asked someone to secure the dog because it appeared to be young and playful, so he did not "want to have to shoot it if it attacked [them]." Peterson said his gun was out and ready because "we're going to a gun call and we found a person that fit the description."

At this point, Hollo said "Trenton Police, stop, stop right there," or "something to that effect." Peterson testified defendant was walking toward a bicycle as the officers approached him, so Hollo grabbed defendant's waistband with his left hand, with his gun still in his right hand at his side.

While Hollo pulled defendant back by his waistband, Peterson motioned to the other individuals to get back and saw defendant pull a handgun out of his pants by the "butt" of the weapon. Peterson secured the firearm from defendant when defendant raised the weapon to hand it to him. The whole exchange happened "very quickly." Peterson said "gun" when he saw the weapon, because Hollo did not see it from his vantage point.

As Hollo and Peterson walked defendant back to their vehicle, other police vehicles pulled up, and the pair put defendant into a prone position to search for other contraband. Peterson then helped Hollo place defendant in handcuffs. Defendant was arrested for possession of the weapon and resisting arrest.

A-0363-19

After hearing the above testimony, the court denied defendant's motion to suppress, finding Peterson's testimony "very credible." Thereafter, on March 9, 2015, defendant pled guilty to the certain persons charge, and on April 21, the court imposed a five-year sentence, with a mandatory five-year period of parole ineligibility, fines and penalties, and credited defendant with 608 days of time served.

Defendant filed his pro se PCR petition in April 2018, and after PCR counsel was assigned, he filed an amended verified petition on June 6, 2019. In support of his pro se petition, defendant certified his defense counsel was ineffective for not securing the clothes defendant was wearing when he was arrested. Defendant claimed the clothing did not match the description of the person for whom police were searching, and his counsel did not prepare for the suppression hearing. In his supplemental certification defendant stated:

> On July 22, 2013, I was in Trenton. I had been shopping in a store on the corner of Walnut and Hampton Streets in Trenton. As I exited the store, I was grabbed from behind. At first I thought I was being attacked by random street dudes. As soon as I realized the people who were assaulting me were police officers, I yielded.
>
> After researching the law, I told my attorney, Kathleen Redpath-Perez, that the police did not establish the necessary indicia of reliability in my case because I was not in the location that was given by the

6

anonymous caller, and I didn't match the description. The police said they were looking for someone in a white t-shirt and blue jeans, with a bald head. I explained to my attorney that I was wearing black shorts when I was arrested and that, since I had remained incarcerated since my arrest, my clothes were being held in the property room at the jail, and should be subpoenaed. I also told her that my foot was broken at the time of my arrest, and I had a big blue plastic boot on it and that there was no way I could have made it from Walnut and Chambers Street to Walnut and Hampton in the few seconds it took for the police to make it to the broadcasted location from the Trenton Police Station.

During the suppression hearing [Peterson] testified I had on blue jeans when he saw and arrested me. I turned to my lawyer then and said we should have had my clothes brought from the jail. I tried to give her the property receipt I had in [c]ourt with me, but she pushed it back. She then turned to me and said they already established identity with the photo of me that the State introduced. I argued with her that that was not a whole picture as it showed only the top half of me.

I also told my lawyer to get the video camera from the Trenton Police Station because it will show what I was wearing. She told me that she saw the tape and it showed me urinating on the floor. She had me thinking she had a copy of the tape because there was a CD in her file that she never let me see. I even argued with [the motion judge] about it in open [c]ourt. I told them I was willing to put in an interlocutory appeal because all of the facts of my case were not presented by my attorney. I told the [j]udge that [a]ttorney Redpath-Perez had a tape that showed me wearing black shorts.

7

The PCR court heard argument on August 9, 2019, and denied the petition without an evidentiary hearing:

> Viewing the evidence in the light most favorable to [d]efendant, the [c]ourt finds that an evidentiary hearing is unwarranted. None of [d]efendant's claims in his pro se submission or his PCR attorney's brief are sufficient to sustain a prima facie claim of ineffective assistance or compel the need for additional fact-finding. Because an evidentiary hearing will not aid the court's analysis of his petition, his request for an evidentiary hearing is denied.

This appeal followed.

We give deference to the PCR court's factual findings on a PCR petition when supported by adequate, substantial, and credible evidence. State v. Harris, 181 N.J. 391, 415 (2004) (citing Toll Bros, Inc. v. Township of W. Windsor, 173 N.J. 502, 549 (2002)). We give no deference to and are not bound by the PCR court's legal conclusions, which we review do novo. Ibid. (quoting Toll Bros, 173 N.J. at 549). "And for mixed questions of law and fact, we give deference, under Rova Farms [Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)], to the supported factual findings of the trial court, but review de novo the lower court's application of any legal rules to such factual findings." Id. at 416 (citing State v. Marshall, 148 N.J. 89, 185 (1997)).

A-0363-19

Defendant argues the PCR court erred by failing to grant his request for an evidentiary hearing, specifically because his counsel at the suppression hearing did not obtain his medical or property records to show the anonymous tip was inaccurate. He contends these observable differences establish a prima facie case that there would have been a different outcome if they were presented.

In fact, although Peterson repeatedly stated defendant was wearing blue jeans, defendant's inventory at the jail and his medical records after his arrest show he was wearing shorts and an orthopedic boot. Jail records at the time of the arrest demonstrated Georgette Koomson, R.N., B.S.N., noted defendant's left foot was in a cast when he arrived at the corrections facility, and Zara Graciano, M.D., subsequently noted an acute proximal phalanx fracture on his x-rays. Further, the inmate personal property report notes he turned in a "watch, (HBAG);[1] shorts, t-shirt, (1) sneaker, socks." (Emphasis added).

Defendant cites Rule 3:22-10(b) for the proposition:

> A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief, a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief. To establish a prima facie case, defendant must demonstrate a

---

[1] The meaning of 'HBAG' is unknown.

A-0363-19

reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed fact lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

Based on our review of the suppression hearing, defendant's counsel did not raise defendant's contentions regarding how the tipster's description did not match what he was wearing. And this failure to do so may present a case of ineffective assistance of counsel, if, indeed, counsel was alerted to the discrepancy by her client. Further, there are disputed factual issues outside the record that require an evidentiary hearing to establish whether counsel failed to investigate evidence that defendant did not match the tipster's description.

Reversed and remanded for an evidentiary hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0363-19